Frank HERNANDEZ

v.

HOME SAVINGS ASSOCIATION OF DALLAS COUNTY

v.

James LYNN, Secretary of the Department of Housing & Urban Development.

No. CA 3–74–818–C.

United States District Court,
N. D. Texas,
Dallas Division.

April 28, 1976.

---

Ronald W. Kessler, Feather & Kessler, Dallas, Tex., for plaintiff.

Donald C. Templin, Haynes & Boone, Dallas, Tex., for defendant and third party plaintiff.

Michael P. Carnes, U. S. Atty., William F. Sanderson, Jr., Asst. U. S. Atty., Dallas, Tex., for third party defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM M. TAYLOR, Jr., Chief Judge.

This case comes before the Court for decision on cross-motions for summary judgment filed by all parties to the suit. The controlling facts are uncontroverted, and the dispute can be resolved by the Court's construction of a certain provision of a Mortgagee's Certificate executed by Home Savings Association of Dallas County.

*Statement of Facts*

On November 19, 1970, Vista Hills Mobile Home Community executed and delivered a

Deed of Trust Note to Home Savings in the amount of $821,100.00. This note was secured by a Deed of Trust and was to be issued by the Secretary of Housing and Urban Development pursuant to Section 207 of the National Housing Act and regulations thereunder. A Mortgagor's Certificate and a Mortgagee's Certificate were executed at the same time and were directed for compliance purposes to the Federal Housing Commissioner. Plaintiff is the assignee of the mortgagor Vista Hills Mobile Home Community, and stands in its shoes with respect to the rights and privileges articulated in the documents involved in this transaction.

Under separate provisions, the Mortgagee's Certificate requires that various charges be collected in cash. For example, Provision 5 required an FHA application and commitment fee, an initial service charge, costs for title and recording expense, and an FHA inspection fee. Provision 18, about which this dispute has arisen, stated that a firm commitment existed with the Federal National Mortgage Association to purchase the loan when fully disbursed and fully insured. Under the terms of this commitment $23,319.24, which represented the total dollar difference between the market interest rate and the FHA allowable interest rate at the time of the FHA commitment, was deposited by mortgagor with the mortgagee Home Savings. The language of Provision 18 regarding this sum reads as follows:

"Until final endorsement for insurance by the Commissioner, all funds collected pursuant to items (c), (d), or (e) above . . shall be held for the account of the mortgagor and shall be subject to your control and direction in the event of claim under the contract of insurance."

Final endorsement by the Commissioner was never made, since during the construction phase of the project, the mortgagor Vista Hills defaulted on its Deed of Trust Note and the mortgagee Home Savings foreclosed on the project.

On February 1, 1974, Plaintiff, as assignee of Vista Hills, made demand on Home Savings for payment of the funds in question, i. e., the $23,319.24 which was to be given to FNMA at the time of final closing of the project. Home Savings did not comply. At that time suit was pending in the 191st Judicial District Court, Dallas County, Texas, by Home Savings against Hernandez on an unrelated matter which has since been disposed of by the state court. On February 21, 1974, Hernandez filed a counterclaim upon Home Savings for the funds in question. After disposal of the other matter in that litigation on May 20, 1974, Home Savings filed a First Amended Answer and Counterclaim and Third Party Action for Interpleader on July 9, 1974, naming James Lynn, Secretary of the Department of Housing and Urban Development (HUD) as Third Party Defendant. Home Savings stated that since no "final endorsement" took place on that project, it is uncertain, because of the demands made by Plaintiff and by HUD, as to which party is entitled to this unused FNMA discount. At that time, Home Savings also tendered the funds in question to Bill Shaw, Clerk of the District Court of Dallas County, Texas.

Subsequently, HUD removed the suit to this Court. Upon order of the Court, the funds in question, now totalling approximately $27,971.65, were moved to the registry of this Court. Home Savings has at all times indicated its willingness to pay the funds according to the order of this Court, and has relinquished all claims on the funds in question.

*Issue Presented*

The issue to be resolved by the Court is whether Plaintiff, as assignee of the mortgagor, or HUD is entitled to the funds deposited by the mortgagor to Home Savings to be held for the account of the mortgagor until final endorsement and then to be used for permanent discount points.

*Conclusions of Law*

The resolution of this issue turns on the Court's construction of the sentence from Provision 18 quoted above. Plaintiff maintains first that the language is unambigu-

ous on its face and that since the final endorsement was never made, title to the funds, "held for the account of the mortgagor," clearly remains in the mortgagor. In the alternative, if the Court finds the language ambiguous, then Plaintiff contends that the commonly applied rules of construction mandate a finding in Plaintiff's favor, since HUD drew the document.

HUD maintains that the controlling phrase of the sentence is "and shall be subject to your (i. e., the Federal Housing Commissioner's) control and direction in the event of claim under the contract of insurance." In other words, HUD maintains that although the funds in question were being held for the account of mortgagor until final endorsement, if a claim for insurance were made before that event, the Commissioner could direct that these funds be paid over to HUD. HUD cites 24 CFR 258(b)(4) to support its position, which provides as follows:

> (4) *Disposition of cash items.* The following cash items shall either be retained by the mortgagee or delivered to the Commissioner *in accordance with instructions to be issued by the Commissioner at the time the insurance claim is filed;* (emphasis added)

> .    .    .    .    .

> (ii) Any cash held by the mortgagee or its agents or to which it is entitled, *including deposits made for the account of the mortgagor,* and which have not been applied in reduction of the principal of the mortgage indebtedness (emphasis added).

A claim under the contract of insurance was in fact made by Home Savings when it elected to foreclose on the property after default and to convey the property to HUD in return for insurance benefits. However, HUD gave no instructions to Home Savings, and when Home Savings was sued by Hernandez and sought instructions from HUD, Home Savings was told that HUD would not issue any instructions, but would leave Home Savings to proceed on its own.

The Court is of the opinion that the contract is unambiguous, and that the final endorsement was a condition precedent to the payment of the discount funds to FNMA. As HUD stated in its Memorandum of Law, the funds in question were not earned by HUD, and would not be until final endorsement for insurance by the Commissioner. A clear reading indicates that upon that contingency, and then upon a claim for insurance, the Commissioner can direct the disbursement of those funds in the way that he sees fit.

Furthermore, if the Court found the language ambiguous, it would feel constrained to construe it in the light most favorable to the Plaintiff, since the language was in printed form and was drawn by HUD, and since HUD is the experienced party in the formulation of the language. *Daniel v. Universal CIT Credit Corp.,* 238 S.W.2d 727 (Tex.Civ.App., Waco, 1951, reversed on other grounds at 150 Tex. 513, 243 S.W.2d 154).

Finally, the Court is of the opinion that HUD by its own actions is estopped from claiming any right to the funds in dispute. Home Savings made its claim under the contract of insurance and received its payment, and the Commissioner did not direct that the funds in question be disbursed in any way. Under 24 CFR 258(b)(4), the Commissioner must do so "at the time the insurance claim is filed," or else this fund is to be retained by the mortgagee "for the account of the mortgagor" (Provision 18). Moreover, the Commissioner specifically refrained from issuing any instruction as to the payment of this account when asked by Home Savings. The Court is of the opinion that HUD's failure to issue instructions estops them from claiming entitlement to the fund at a later date.

With regard to the Motion of Home Savings for reasonable attorneys fees and court costs expended in bringing this interpleader action, the Court is of the opinion that these fees and costs should be award-

ed. Home Savings has demonstrated that it claims no interest in the funds and that it has acted in good faith in bringing this action to resolve the dispute between the Plaintiff and HUD as to who is entitled to the funds.

It is therefore ORDERED, ADJUDGED and DECREED that of the amount deposited into the registry of the Court by Home Savings for the purposes of this interpleader action, Home Savings be paid the amount of $1534.30 for attorneys fees and court costs, and that Plaintiff be paid the remainder.