ers of administrative services, who are junior to such lienors.

■ Third, petitioner claims that the certificates were not "equitable," and that we should, in effect, reform their terms so as to give petitioner the priority it now seeks. Petitioner cites no authority supportive of this unprecedented request; it complains, however, that the certificate terms singled it out for discrimination, since they did give priority to certain other providers of legal services. Viewing the record as a whole, however, there does not appear to have been an abuse of discretion. Petitioner has never appeared in this case, which originated as an involuntary reorganization proceeding. Petitioner's claim is for services previously rendered in connection with an unsuccessful attempt to liquidate the debtor by way of a voluntary straight bankruptcy. The record shows that respondent was the only lender willing to advance funds to the debtor during the pendency of the reorganization proceedings. It seems perfectly natural that respondent should choose to give up its senior status only to those administrators who were actively contributing to the reorganization effort. We can discern nothing inequitable about it.

Finding no error, we AFFIRM the judgment of the District Court.

Frank HERNANDEZ, Plaintiff-Appellee,

v.

HOME SAVINGS ASSOCIATION OF DALLAS COUNTY, Defendant and Third-Party Plaintiff-Appellee,

v.

Moon LANDRIEU, Secretary of the Department of Housing and Urban Development, Third-Party Defendant-Appellant.

Frank HERNANDEZ, Plaintiff,

v.

HOME SAVINGS ASSOCIATION OF DALLAS COUNTY, Defendant and Third-Party Plaintiff-Appellee,

v.

Moon LANDRIEU, Secretary of the Department of Housing and Urban Development, Third-Party Defendant-Appellant.

B. B. ADAMS GENERAL CONTRACTOR, ETC., Plaintiff-Appellee,

v.

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant-Appellant,

v.

MODERN AMERICAN MORTGAGE and James A. Pate, Defendants-Appellees.

Nos. 76–2794, 77–1421 and 77–2504.

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1979.

Leonard Schaitman, Mark H. Gallant, Michael F. Hertz, Attys., Dept. of Justice, App. Section, Civ. Div., Washington, D. C., for third-party defendant-appellant.

Donald C. Templin, Dallas, Tex., for Home Savings Assn. of Dallas County.

Ronald W. Kessler, Dallas, Tex., for Frank Hernandez.

R. Dale Wootton, Dallas, Tex., for James A. Pate.

Molly Steele, Harry M. Roberts, Jr., Paul M. Thorp, Dallas, Tex., for American Mortgage Corp.

Before JONES, CLARK and GEE, Circuit Judges.

JONES, Circuit Judge:

The Hernandez appeals stem from the federal financing of the construction of a mobile home park project which, literally, never got off the ground. Vista Hills Mobile Home Community obtained an $821,000 mortgage loan from Home Savings Association of Dallas County to finance the construction of a mobile home park project. The Department of Housing and Urban Development, herein called HUD, agreed to insure a loan under the National Housing Act, 12 U.S.C.A. § 1701, et seq. The Federal National Mortgage Association, herein referred to as FNMA, made a firm commitment to purchase the mortgage note and undertake permanent financing upon completion of the project.

Several documents accompanied the transaction, including a Building Loan Agreement, a Mortgagor's Certificate, a Mortgagee's Certificate and a Deed of Trust Note. Regulations promulgated by the Secretary of HUD[1] implement Section 207 of the National Housing Act. 12 U.S. C.A. § 1713.

Vista Hills was required, among other things, to deposit with Home Savings the sum of $35,635.74 for the benefit of FNMA, which was to make the long term mortgage loan. Of that amount, $23,319.24 represented a discount fee, or permanent financing charge, which was placed in an escrow account and earmarked for payment to FNMA at the time of the final disbursement of the loan. The remaining $12,316.50 constituted a "commitment fee-purchase and market fee" which was paid to FNMA at the time the contract was executed. Before construction was completed, Vista Hills defaulted on the loan. Home Savings foreclosed, then filed an insurance claim with and assigned all of its interests in the mortgage to HUD.

The regulations, which were incorporated into the mortgage documents, provide that at the time a mortgagee forecloses and files its insurance claim, HUD shall instruct the mortgagee concerning disposition of cash deposits which it has been holding for the account of the mortgagor. By the regulations, 24 C.F.R. § 207.258(b)(4)(ii), it was provided that HUD should advise the mortgagee whether such cash deposits are to be "retained" or "delivered to the commissioner [of HUD]." HUD did not instruct Home Savings concerning disposition of the FNMA discount fee deposit.

Vista Hills assigned to Frank Hernandez whatever interest it might have in the FNMA escrow funds held by Home Savings. Hernandez made a demand for the funds and payment was refused. He then brought an action against Home Savings in a Texas State Court. Home Savings interpleaded HUD, asserting that Home Savings

1. 24 C.F.R. § 207.1–499.

had no personal stake in the funds but was holding them for the benefit of HUD. HUD removed the case to the United States District Court.

HUD and Hernandez filed motions for summary judgment. Hernandez relied primarily on paragraph 18 of the Mortgagee's Certificate which provides as follows:

"Until final endorsement for insurance by the commissioner, all funds collected pursuant to items (c), (d) or (e) above [item (d) includes the $35,635.74 Vista Hills had paid to cover the FNMA charges] and not paid over to the permanent lender, . . . shall be held for the account of the mortgagor and shall be subject to your [HUD's] control and direction in the event of claim under the contract of insurance."

Hernandez asserted that because no "final endorsement" had occurred, the mortgagor having defaulted prior to the full disbursement of the loan, the escrow funds were still being "held for the account of the mortgagor" and had to be paid over to Hernandez as the mortgagor's assignee. HUD contended that the same provision of the mortgagee's certificate supported the government's claim to the funds, that after a default the funds become "subject to your [HUD's] control and direction in the event of claim under the contract of insurance." HUD directed attention to the regulation which specifies how cash deposits held by the mortgagee are to be treated when the mortgagor defaults and the mortgagee submits its claim for insurance to HUD. That regulation provides:

"(4) Disposition of Cash Items. The following cash items shall either be retained by the mortgagee or delivered to the commissioner in accordance with instructions to be issued by the commissioner at the time the insurance claim is filed: . . . (ii) any cash held by the mortgagee or its agents or to which it is entitled, including deposits made for the account of the mortgagor, and which have not been applied in reduction of the principal of the mortgage indebtedness." 24 C.F.R. § 207.258(b)(4)(ii).

The district court granted Hernandez motion for summary judgment. *Hernandez v. Home Savings Association of Dallas County,* 411 F.Supp. 858. The court concluded that under the Mortgagee's Certificate, the discount fee deposit was being "held for the account of the mortgagor" prior to payment over to FNMA at "final endorsement" of the construction loan documents and that if permanent financing by FNMA was not accomplished, the deposit should be refunded to the mortgagor or its assignee. The court also decided that HUD was, in any event, estopped under the terms of 24 C.F.R. § 207.258(b)(4)(ii) from claiming the discount fee deposit since HUD failed, at the time the insurance claim was filed, to instruct Home Savings whether to retain the funds or to transfer them to the commissioner.

After filing notice of appeal, HUD discovered that it had neglected to introduce into evidence the Building Loan Agreement. Paragraph 9 of that document provides that, upon default,

"If the lender so elects to terminate this agreement, it may use and apply any funds deposited with it by the borrower, regardless of the purpose for which such funds were deposited, in such manner and for such purposes as the commissioner may prescribe."

By motion, HUD asked the district court to reconsider its decision in light of the Building Loan Agreement. The appeal was stayed. The district court issued a supplemental opinion, *Hernandez v. Home Savings Association of Dallas County,* 425 F.Supp. 835, in which it was stated that the language of paragraph 9 was consistent with the court's original interpretation of the contract and regulations, and that the language at most "creates an ambiguity which must be interpreted against HUD." Id. at 836.

In the *Adams* case, James A. Pate obtained a $698,400 mortgage loan from Modern American Mortgage Corporation to finance the construction of an apartment complex. HUD insured the loan and Modern American obtained a firm commitment from

FNMA for permanent financing of the project upon its completion. The documents and regulations involved were the same as those involved in the Hernandez transaction. Pate was required to deposit with Modern American $37,853.28, including a discount fee of $27,377.28, to be paid to FNMA at the time permanent financing was completed. A commitment fee of $10,476, was payable to FNMA immediately. Pate executed a "cost plus" construction contract with B. B. Adams, General Contractor, Inc., herein sometimes called Adams, to build the apartment complex. Adams was to receive monthly payments of 90 per cent of its costs with 10 per cent to be retained and disbursed upon completion and acceptance of the work. Pate defaulted on his mortgage payments to Modern American. It filed an insurance claim with HUD and assigned to HUD its claims against Pate. It does not appear whether HUD instructed Modern American as to the retention or transfer of the FNMA discount fee deposit. Adams brought an action against HUD, Modern American, and Pate seeking to recover, among other things, $30,000 in unreleased retainages. Adams contended that it had substantially completed construction and therefore was entitled to recover the retainages being held by the lender, notwithstanding the mortgagor's default. Pate filed a cross-claim against HUD seeking to recover the discount fee deposit. He asserted that since the purpose of the escrow never had been fulfilled, the funds still belonged to him and should be paid over to him. HUD asserted that Adams had no cognizable claim against the government and urged dismissal of the entire action for lack of subject matter jurisdiction. In opposition to Pate's claim to the discount fee deposit, HUD contended that it was entitled to set off the deposit against its liability to the lender under the lender's insurance claim. The district court entered an order finding jurisdiction over all parties. It awarded Adams the 10 per cent retainages, and denied Pate's claim to the discount fee deposit.

HUD and Pate appealed. This Court dismissed the appeal as interlocutory, but instructed the district court to reconsider the jurisdictional question on remand. *B. B. Adams, General Contractor v. Department of HUD,* 5th Cir. 1974, 501 F.2d 176. Subsequently, the District of Columbia Circuit decided *Trans-Bay Engineers & Builders, Inc. v. Hills,* D.C.Cir.1976, 179 U.S.App.D.C. 184, 551 F.2d 370. This was an action by a contractor for retainages similar to Adams' original claim in the present case. The court in Trans-Bay held that federal question jurisdiction existed under 28 U.S.C.A. § 1331(a) since the case turned on application of federal common law generated by the National Housing Act. It granted relief to the contractor on its claim for retainages. Relying on Trans-Bay, the district court found federal question jurisdiction over all claims. The court adhered to its prior award of the retainages to Adams but departed from its earlier ruling against Pate on his claim to the discount fee deposit. In deciding for Pate, the court followed the decision in the Hernandez cases. The district court held that the phrase "shall be held for the account of the mortgagor" in paragraph 18 of the Mortgagee's Certificate required that the fund be returned to the mortgagor in the event permanent financing was not effected. The court's decision made no mention of the Building Loan Agreement provisions or the regulation, 24 C.F.R. § 207.258(b)(4)(ii). HUD has appealed from that portion of the decision which awarded the discount fee deposit to Pate.

■ The issue now before this Court is whether a defaulting mortgagor or its assignee is entitled to recover the discount fee or permanent financing charge which it was required to place in an escrow account with the mortgagee for the benefit of FNMA upon its assumption of the financing. It is the conclusion of this Court that the district court's decision that the mortgagor or its assignee is entitled to the discount fee deposit cannot be sustained.

■ The parties to the mobile home park and apartment complex mortgage transactions executed the instruments furnished by HUD. They agreed to be bound by HUD

regulations implementing the federal multi-family housing mortgage insurance program. All of the relevant documents and regulations, including the Building Loan Agreement, are before the Court on this appeal. We reject the contention of Hernandez that the Building Loan Agreement cannot be considered on this appeal. The district court gave full consideration to the Building Loan Agreement and properly denied the Rule 60(b) motion on the merits. *Ideal Structures Corp. v. Levine Huntsville Development Corp.,* 5th Cir. 1968, 396 F.2d 917. The documents and regulations constitute an integrated contract. The District of Columbia Court noted, in considering the HUD contract forms, that,

> "[w]here two or more written agreements are contemporaneously executed as part of one complete package, they should be construed together and should be construed as consistent with each other, even if not all the agreements are signed by the same parties." *Trans-Bay Engineers & Builders, Inc. v. Hills,* supra, 179 U.S.App.D.C. at 193, 551 F.2d at 379 (footnote omitted).

By regulation it is provided that,

> "[f]rom the date of initial endorsement, the commissioner and the mortgagee or lender shall be bound by the provisions of this subpart to the same extent as if they had executed a contract including the provisions of this subpart and the applicable sections of the Act."

■ It seems clear that, under the Building Loan Agreements, the Regulations and the Mortgagees' Certificates, when Vista Hills and Pate defaulted on the loans and Home Savings and Modern American foreclosed, Vista Hills and Pate forfeited the discount fee deposits to Home Savings and Modern American. The Building Loan Agreement authorized Home Savings and Modern American to use the discount fee deposits in such manner and for such purposes as the commissioner may prescribe. The fact that such funds were deposited for the purpose of providing a permanent financing charge seems irrelevant. The regulation, 24 C.F.R. § 207.258(b)(4)(ii) required Home Savings and Modern Ameri-

can either to retain the discount fee deposits or deliver the funds to the commissioner "in accordance with the instructions to be issued by the commissioner at the time the insurance claim is filed." Paragraph 18 of the Mortgagee's Certificate herein quoted, provides that until final endorsement for insurance by the commissioner, the discount fee deposit "shall be held for the account of the mortgagor" and, in the event of a claim for insurance—that is, upon default—"shall be subject to your [HUD's] control and direction . . . .". None of these contractual provisions requires the return of the discount fee deposit to the mortgagor in the event of default. Rather, they provide for possession or use of the deposit by the mortgagee with ultimate control of the deposit vested in HUD.

■ Our conclusion that the discount fee deposits became payable to Home Savings and Modern American is not altered by HUD's failure to give instructions to Home Savings as to the disposition of the funds. HUD contends and the Court agrees that the instruction provision of the regulation is ministerial in nature. HUD has the option of paying multifamily insurance claims in cash, in debentures, or in a combination of both. The purpose of the instruction requirement is to inform the mortgagee as to the method of payment elected by HUD. If HUD chose to pay an insurance claim in debentures, it would notify the mortgagee that all cash deposits should be "delivered to the commissioner." If HUD elected to pay all or part of a claim in cash, it would instruct the mortgagee to "retain" the cash deposits and then charge them against the amount of the insurance claim. HUD, as assignee of Home Savings, is not estopped from claiming the discount fee deposit merely because it failed to notify Home Savings as to the method of payment it had elected.

■ Paragraph 18 of the Mortgagee's Certificate does not mean that where, as here, no "final endorsement" had been made, escrow funds continue after default to be "held for the account of the mortgagor" and must therefore be refunded to the mortgagor or its assignee. The phrase "shall be held for the account of the mort-

gagor" refers to the period before a default occurs. Upon default, the funds become "subject to HUD's control and direction." Final endorsement is only a condition precedent to a claim by FNMA to the discount fee deposit. The only conditions precedent to HUD's right to the control and direction of the deposit are default by the mortgagor and the filing of an insurance claim by the mortgagee. Here, these conditions have been met.

Contract documents and regulations identical to the ones in this case were considered in *Lindy v. Lynn*, E.D.Pa.1974, 395 F.Supp. 769, affirmed, 3d Cir. 1975, 515 F.2d 507. There the plaintiff obtained an FHA-insured multifamily mortgage loan from a bank. Before commencing construction the plaintiff defaulted. The mortgagee filed its insurance claim with HUD. Pursuant to 24 C.F.R. § 207.258(b)(4)(ii), HUD instructed the mortgagee to retain all deposits made by the mortgagor and charge them against its claim for insurance. Among the deposits was a fund to cover permanent financing fees. The mortgagor brought an action to enjoin HUD from obtaining the fund or having the mortgagee retain the fund and charge it against the insurance claim. The mortgagor contended that the original "purpose for which the fund was created never became operative." 395 F.Supp. at 772. The district court rejected the mortgagor's claim on the basis of the language of paragraph 9 of the Building Loan Agreement and the insurance claim provision of paragraph 18 of the Mortgagee's Certificate. On appeal, the Court of Appeals for the Third Circuit affirmed, holding that it "[had] carefully reviewed the mortgage loan instruments and [found] no error in the district court's careful construction of them and in its conclusion that 'the plaintiff is precluded from asserting a valid claim to the [funds].'" Unpublished opinion 6 (May 28, 1975).

Hernandez and Pate had no rights to the deposits. The filing of an insurance claim occurs after a default by a mortgagor. Upon a default and the filing of an insurance claim the control of the fund passes to HUD which was entitled to judgment in both of the causes on appeal.

On the theory that Home Savings was only a stakeholder in this action, the district court awarded the attorney for Home Savings a fee to be paid out of Hernandez' recovery. Notwithstanding its stakeholder status, Home Savings is not entitled to an award of attorney fees against HUD. Under sovereign immunity principles, no award of attorney fees may be made against the government in the absence of specific statutory authorization. See *Alyeska Pipeline Service Co. v. Wilderness Society*, 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141; *National Association of Regional Medical Programs, Inc. v. Mathews*, D.C.Cir.1976, 179 U.S.App.D.C. 154, 551 F.2d 340, cert. denied, 1977, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270. There is no statute authorizing an award of attorney fees against the government under these circumstances. Therefore, the award of attorney fees to Home Savings will be reversed.

For the reasons stated, the judgments of the district court for Hernandez and Pate are reversed and the consolidated causes are remanded with instructions that summary judgments be entered for HUD.

REVERSED AND REMANDED.