551 F.2d 340
 179 U.S.App.D.C. 154
 NATIONAL ASSOCIATION OF REGIONAL MEDICAL PROGRAMS, INC., et al.
v.
Honorable F. David MATHEWS, Individually and as Secretary of
Health, Education and Welfare, et al., Appellants
(two cases).
Appeal of Jerome S. WAGSHAL.
 Nos. 75-1615, 75-2001.
 United States Court of Appeals,
District of Columbia Circuit.
 Submitted without Argument Dec. 2, 1976.
Decided Dec. 13, 1976.
Certiorari Denied June 6, 1977.
See 97 S.Ct. 2674.
 
 Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Leonard Schaitman and Eloise E. Davies, Attys., Appellate Section Civil Division, Dept. of Justice, Washington, D. C., were on the brief for appellant, Secretary of Health, Education and Welfare.
 Jerome S. Wagshal, Washington, D. C., was on the brief for appellees.
 Before TAMM, MacKINNON, and ROBB, Circuit Judges.
 Opinion for the Court filed by Circuit Judge TAMM.
 TAMM, Circuit Judge:
 
 
 1
 The facts and issues of this case are closely analogous to those found in National Council of Community Mental Health Centers, Inc. v. Mathews, 178 U.S.App.D.C. 237, 546 F.2d 1003 (1976) (hereinafter NCCMHC ). Two basic issues are presented here. The first concerns the district court's award of an attorney's fee out of federal grant funds; the second involves the power of the district court to award that fee against the individual class members. As we find that the NCCMHC decision is controlling here, we reverse the judgment of the district court.
 
 I. FACTUAL BACKGROUND
 
 2
 As in NCCMHC, this case arises out of a district court order awarding Jerome Wagshal an attorney's fee for successfully prosecuting a class action claim against the Department of Health, Education and Welfare (HEW) which resulted in the release of illegally impounded funds exceeding one hundred million dollars.[1] The funds involved were appropriated by Congress for the Regional Medical Programs (RMPs) under two amendments to the Public Health Service Act, 84 Stat. 1298 (1970) and 87 Stat. 93 (1973), as amended 42 U.S.C. § 299a (Supp. V 1975). The purpose of these grants is to assist in the establishment of regional cooperative arrangements among medical institutions for research and training in the fields of heart disease, cancer, stroke, and kidney disease. After plaintiffs' success on the merits, the district court ordered the defendant-Secretary of HEW to deposit up to $200,000 of unexpended funds into the registry of the court.[2] Pursuant to this order HEW obligated $180,000 of unexpended direct operations funds.[3] The disposition of these funds is now at issue.
 
 
 3
 The district court determined that it had power to award a fee from grant funds because all of the grant funds were obligated to the grantees pursuant to its decision on the merits and therefore the government was nothing more than a stakeholder of these monies.[4] It reasoned that as long as the funds belonged to the grantees, an award of attorney's fees was not barred by 28 U.S.C. § 2412 (1970).[5] As precedent for its ruling, the court relied on National Council of Community Mental Health Centers, Inc. v. Weinberger, 387 F.Supp. 991 (D.D.C.1974), which we recently overruled in NCCMHC, supra.
 
 
 4
 In addition to finding that it had authority to award an attorney's fee from grant funds, the district court held that it had in personam jurisdiction over the individual RMP class members, and thus could order each member to pay the designated fee. The court based its in personam jurisdiction on the fact that each class member had litigated the merits of the case before the court and had benefitted therefrom, and in addition, that each had had actual notice of the fee proceeding and an opportunity to participate in it.[6]
 
 
 5
 In view of its finding that it had in personam jurisdiction over the class as well as authority to compel disbursal of grant funds for attorney's fees, the district court devised a somewhat convoluted formula for the payment of such fees. It first assessed an attorney's fee amounting to $105,500 against the benefitting class. Each member was to pay its pro rata share ostensibly from non-grant funds but if these proved insufficient, grant funds could be used to make up the difference. The court then ordered HEW to simultaneously supplement each RMP's grant by transferring from unexpended direct operations funds an amount identical to the legal expense incurred by each.[7] Without waiting for this court to make a determination as to the legality vel non of the fee award from grant funds, the plaintiff class proceeded to pay Wagshal's fee mostly from such monies; this fee, Wagshal now contends, was not commensurate with the value of his services. NARMP Reply Brief at 3 n.5. Reimbursement to the class by HEW from the unexpended direct operations funds has been stayed pending the outcome of this appeal.
 
 II. THE SOURCE OF THE FEE PAYMENT
 
 6
 The first problem confronting us is to determine exactly what funds are actually being used to pay the attorney's fee. As 28 U.S.C. § 2412 prohibits an award of attorney's fees against the government, we must unravel the payment scheme devised by the district court in order to uncover the true source of the funds from which the fee must be paid. If the source is the government, section 2412 mandates that another statute specifically provide for the attorney's fee recovery or else such recovery is clearly prohibited.
 
 
 7
 There seems to be considerable confusion both in the trial court's opinion and in the briefs as to where this money is to come from. The district court discussed at length its power to award a fee from grant funds[8] but then ordered the class to pay the fee from non-grant funds to the fullest extent possible.[9] At the same time, it ordered HEW to make a similar amount of money available to the class from unexpended direct operations funds, but in the same paragraph it refers to these monies as unexpended grant funds.[10] The parties further complicate the matter. Wagshal contends that HEW failed to follow the district court's pendente lite order to obligate unspent grant funds to the reserve fund.[11] HEW in turn objects to the use of program income monies to partially pay the fee,[12] an objection which was not voiced at the district court level.[13]
 
 
 8
 The conclusion which we draw from all of this is that the district court appears to have engaged in a valiant effort to avoid the strictures of section 2412. The court's payment formula makes it appear as if the RMPs are the source of the fee payment, when in fact it is the government which is ultimately being charged with the award. This device cannot camouflage the true payor of the fee: the government.
 
 
 9
 Whether these monies are labeled unexpended direct operations or unexpended grant funds is not important. Both of these funds were part of the same congressional appropriation and subject to the same general rules and regulations. Both lapse at the end of the budget period into the United States treasury and cannot again be reached by the grantees without an authorization from HEW.[14] We held in NCCMHC that such unexpended funds properly belong to the government and therefore an award of attorney's fees from these funds would be an award against the United States prohibited by section 2412, unless otherwise specifically authorized by another statute. At 241 of 178 U.S.App.D.C., at 1007 of 546 F.2d.
 
 
 10
 No other statute specifically authorizes this award. The Public Health Service Act clearly sets forth the purposes for which the appropriated funds are to be used; attorney's fees are not mentioned. See 42 U.S.C. §§ 229-299j (1970). A specific authorization allowing attorney's fees cannot be found in the HEW regulations implementing the grant program. See 42 C.F.R. §§ 54.401-414 (1975). In fact, these implementing regulations very pointedly state that "(t)he grantee will use grant funds solely for the purposes for which the grant was made . . . ." 42 C.F.R. § 54.405(a) (1975). The only mention of attorney's fees is in the uniform administrative requirements and cost principles regulations which clearly provide that all legal costs incurred in a suit against the government are not allowable.[15] As in NCCMHCthe court is thus left with no equitable jurisdiction to award attorney's fees in this case where the payment would come from the United States government. NCCMHC, supra, at 241 - 242 of 178 U.S.App.D.C., at 1007-1008 of 546 F.2d. Since we hold that the district court is prohibited by statute from awarding Wagshal a fee from government funds, we must proceed to the question of whether the individual class members could be charged with the fee payment.[16]
 
 III. THE NEED FOR ADEQUATE REPRESENTATION
 
 11
 Contrary to the situation in NCCMHC, the class members in this action were given actual notice of the proposed settlement on the merits, along with an opportunity to object to any of its provisions, as well as actual notice of the fee application and of each member's right to participate in this proceeding.[17] As in NCCMHC however, none of the individual class members actually appeared before the court. On the basis of these facts and the court's prior certification of the class on the merits pursuant to Fed.R.Civ.P. 23(b)(1) and (2), it found continuing in personam jurisdiction over the individual RMP class members.
 
 
 12
 It is important to note at the outset that the parties have switched positions. In this fee application, Jerome Wagshal, the attorney for the class on the merits, is suing both HEW and the class members for an attorney's fee. Even though Wagshal is proceeding pro se in the instant litigation, he also is serving as counsel for the National Association of Regional Medical Programs, Inc. (NARMP), an association which includes all 53 RMPs.[18] NARMP retained Wagshal to bring a class action to compel release of the illegally impounded grant funds. The retainer agreement was modeled after the one employed in the NCCMHC case.[19] This agreement was a contract exclusively between NARMP and Wagshal which provided that NARMP would put up a minimum initial fee (amounting to $21,070)[20] and if the litigation proved successful, a fee would be sought from the class and the initial fee refunded to NARMP. Wagshal has in fact made this refund.[21]
 
 
 13
 In order to properly certify a class, a court must find that the named representatives of the class will "fairly and adequately protect the interests of the class," as required by Fed.R.Civ.P. 23(a)(4). The named representatives of the RMPs were NARMP and two individual RMPs. There is no question but that on the merits, the class was adequately represented by NARMP through its counsel, Jerome Wagshal. The two individual RMPs, on the other hand, were apparently named in order to assure that the plaintiffs had standing to bring the suit. They never submitted any papers to the court and were not represented by separate attorney in this fee proceeding.
 
 
 14
 Basic consideration of fairness require that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment.[22] Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.[23] Senter v. General Motors Corp., 532 F.2d 511, 524-25 (6th Cir. 1976).
 
 
 15
 As in NCCMHC,[24] it is obvious that NARMP no longer shares common interests with the individual RMPs since it stands to benefit from the refund due it by Wagshal if attorney's fees are ultimately awarded against the class members. The awkward position in which NARMP (represented by Wagshal) finds itself is well illustrated by its attempt to champion the RMPs' "right to pay a fee"! NARMP Reply Brief at 2. Since no one else appeared on behalf of the class in this fee application, the only reasonable conclusion which can be drawn is that the class was not adequately represented by a named member without conflicting interests in this fee case. This being so, we must now decide whether notice and an opportunity to participate, without adequate representation by a class member, are sufficient prerequisites to confer in personam jurisdiction on the court in this class action. At this point, this case goes one step farther than the NCCMHC case.
 
 
 16
 Debate over the due process requirements of class action proceedings has focused predominantly on the sufficiency of notice to the class members and their opportunity to be heard.[25] The proposition that there must also be adequate representation originated in the leading Supreme Court case of Hansberry v. Lee, 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940).[26] This additional factor however, has often been viewed since Hansberry as ancillary to the notice requirement and thus the law governing the interrelationship between notice and adequate representation in a class action remains unclear.[27]
 
 
 17
 One of the leading cases in which a court has found that adequate representation in class actions is constitutionally mandated is Gonzales v. Cassidy, 474 F.2d 67 (5th Cir. 1973). In his opinion for the court, Judge Ingraham reasoned that, since the 1966 amendments to Rule 23 eliminated the distinctions between true, hybrid and spurious class actions, along with the concomitant differing res judicata effect of each type of action, due process of law requires that absent members of a class be adequately represented in order to be bound by the court's judgment.[28] Id. at 74-75. At least in the view of the Fifth Circuit then, adequacy of representation would appear to be both a prerequisite to class suit under Rule 23(a)(4) and a constitutional requirement as well.[29]
 
 
 18
 It seems clear to us, too, that the adequacy of class representation has a constitutional dimension. Class actions involve the delegation of authority to a named representative to pursue a common goal. In this pursuit, it is not only the duty of the class representative to ensure that the absent members' interests are adequately protected; it is also a responsibility that the process of class adjudication as a whole must shoulder.[30] In this regard one court has noted that:
 
 
 19
 (u)nless the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by the other members of the class, it would be inequitable to recognize plaintiffs as representative, and a violation of due process to permit them to obtain a judgment binding absent plaintiffs.
 
 
 20
 Dierks v. Thompson, 414 F.2d 453, 456 (lst Cir. 1969), citing Hansberry v. Lee, supra. In the case at bar, NARMP (the purported class representative) is seeking to uphold the district court's judgment against the absentee class members. This course of action obviously is not in the best interests of the individual class members.[31] It is evident therefore that this lack of adequate representation of the absentee class members, both here and in the district court, denies them due process of law and prevents the court from assuming personal jurisdiction over the absentee members.[32] The district court thus erred in awarding an in personam judgment of attorney's fees against the individual class members.[33]
 
 IV. CONCLUSION
 
 21
 We find that 28 U.S.C. § 2412 prevents us from awarding Wagshal an attorney's fee out of unexpended federal grant funds, as these funds belong to the United States government. The court also may not charge the individual class members with payment of the fee because it does not have jurisdiction over them due to their lack of adequate representation in the fee proceeding. We need not reach the third issue concerning the size of the award, since the judgment of the district court must in any case be reversed.
 
 
 22
 So ordered.
 
 
 
 [1]
 The unreported decision on the merits in National Ass'n of Regional Medical Programs, Inc. v. Weinberger, Civil Action No. 1807-73, was entered on February 7, 1974 and amended by order on July 22, 1974
 
 
 [2]
 The fee award case is reported. National Ass'n of Regional Medical Programs, Inc. v. Weinberger, 396 F.Supp. 842 (D.D.C.1975) (hereinafter NARMP v. Weinberger )
 
 
 [3]
 Id. at 844
 
 
 [4]
 Id. at 844-45
 
 
 [5]
 Title 28 U.S.C. § 2412 (1970) provides:
 Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established by statute or court rule or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation. Payment of a judgment for costs shall be as provided in section 2414 and section 2517 of this title for the payment of judgments against the United States.
 (Emphasis added).
 
 
 [6]
 NARMP v. Weinberger, supra at 846-47
 
 
 [7]
 Id. at 852
 
 
 [8]
 Id. at 844-46
 
 
 [9]
 Id. at 852
 
 
 [10]
 The court finds it fully consistent with its judgment on the merits of this case to order defendants to obligate an additional $105,500 to the RMPs. This money, obligated originally to direct operations, was not needed for direct operations and thus the funds should go to the RMPs for their much-needed operations. . . . Since unexpended grant funds remain available, it is proper that each RMP's grant be enlarged by the amount of its unexpected legal expense
 Id. (Emphasis added).
 
 
 [11]
 Wagshal Brief at 37-39
 
 
 [12]
 HEW Brief at 34 n.27
 
 
 [13]
 NARMP v. Weinberger, supra at 844, 852 n.3; Wagshal Brief at 25
 
 
 [14]
 See HEW Reply Brief at 5 & n.6, 16 & n.17; Wagshal Brief at 30, 38. The precise manner in which federal grant funds are disbursed was fully discussed in National Council of Community Mental Health Centers, Inc. v. Mathews, 178 U.S.App.D.C. 237, 546 F.2d 1003 (1976) (hereinafter NCCMHC )
 
 
 [15]
 45 C.F.R. Part 74, Subpart Q, Appendix F, § G-31(d) (1975) states:
 (d) Costs of legal, accounting and consulting service(s), and related costs, incurred in connection with . . . the prosecution of claims against the Government, are unallowable.
 
 
 [16]
 The government suggests that, if the court finds that it has in personam jurisdiction over the individual class members, an enforceable contractual obligation might be found between Wagshal and the class members. This issue was not reached by the trial court because it determined that grant funds could be used to pay the fee. HEW Brief at 42 n.32
 
 
 [17]
 Compare NARMP v. Weinberger, supra at 843, 846 with NCCMHC, supra, at 240 of 178 U.S.App.D.C., at 1006 of 546 F.2d
 
 
 [18]
 We note with concern the apparent conflicts of interest which arise when a class action attorney prosecutes his own fee application against the class members and at the same time serves as counsel on appeal to a named representative of the class (NARMP) which purportedly is attempting to protect the interests of the individual RMP class members
 
 
 [19]
 NCCMHC, supra at 239-40 of 178 U.S.App.D.C., at 1005-1006 of 546 F.2d & n. 5
 
 
 [20]
 Wagshal Brief at 5 n.7; NARMP Reply Brief at 3 n.5
 
 
 [21]
 Note 20 supra
 
 
 [22]
 This is especially important because of the broadened res judicata effect under the 1966 amendments to Fed.R.Civ.P. 23. See Gonzales v. Cassidy, 474 F.2d 67, 74-75 (5th Cir. 1973); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968) (Eisen II ); Dolgow v. Anderson, 43 F.R.D. 472, 493 (E.D.N.Y.1968), rev'd on other grounds, 438 F.2d 825 (2d Cir. 1971); 7 C. Wright and A. Miller, Federal Practice and Procedure § 1765, at 616-17 (1972) (hereinafter Wright and Miller); 3B J. Moore, Federal Practice P 23.07(1), at 23-357 & n.32 (2d ed. 1975)
 
 
 [23]
 See also Wright and Miller, § 1768, at 638
 
 
 [24]
 NCCMHC, supra, at 242 of 178 U.S.App.D.C., at 1008 of 546 F.2d
 
 
 [25]
 See, e.g., Developments in the Law Class Actions, 89 Harv.L.Rev. 1321, 1402-16, 1471-75 (1976); Comment, The Importance of Being Adequate: Due Process Requirements in Class Actions Under Federal Rule 23, 123 U.Pa.L.Rev. 1217 (1975); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)
 
 
 [26]
 "It is familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present . . .." Hansberry v. Lee, 311 U.S. 32, 42-43, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940)
 
 
 [27]
 See 89 Harv.L.Rev., supra at 1402-03; 123 U.Pa.L.Rev., supra at 1218-19
 
 
 [28]
 See also Note, Collateral Attack on the Binding Effect of Class Action Judgments, 87 Harv.L.Rev. 589, 595-96 (1974); Sagers v. Yellow Freight Systems, Inc., 68 F.R.D. 686, 689 (N.D.Ga.1975), aff'd, 529 F.2d 721 (5th Cir. 1976)
 
 
 [29]
 See generally Brennan v. Midwestern United Life Insurance Co., 450 F.2d 999 (7th Cir. 1971), cert. denied, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); Dierks v. Thompson, 414 F.2d 453 (lst Cir. 1969); 89 Harv.L.Rev., supra at 1471. Cf. In re Four Seasons Securities Laws Litigation, 502 F.2d 834, 842-43 (10th Cir.), cert. denied, 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974)
 
 
 [30]
 89 Harv.L.Rev., supra at 1410-11
 
 
 [31]
 Responsibility for ensuring adequacy of representation must devolve first of all on the trial court since it is the only person in a position to objectively assess the typicality of interests between the named representatives and the absent class members. However, class counsel must recognize his responsibility to identify representation problems so that they may be cured. Counsel has the obligation to report conflicts of interest among class members should they arise during the course of litigation. See 89 Harv.L.Rev., supra at 1411, 1592-97
 
 
 [32]
 See generally 123 U.Pa.L.Rev., supra at 1227-28 & n.46
 
 
 [33]
 We note that prior to the institution of this fee proceeding the RMPs had unanimously agreed to pay Wagshal $106,000 from non-grant funds as an "interim partial" fee payment. The sum and substance of all the parties' and courts' efforts therefore were apparently engaged for the purpose of attaining a much larger fee. NARMP Reply Brief at 2 & n.1; HEW Brief at 51