SOCIAL SERVICES UNION, LOCAL 535, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO; and Local 715, Service Employees International Union, AFL–CIO, Plaintiffs-Appellants,

v.

COUNTY OF SANTA CLARA, Defendant-Appellee.

No. 76–1099.

United States Court of Appeals, Ninth Circuit.

Dec. 12, 1979.

David A. Rosenfeld, Vanbourg, Allen, Weinberg, Williams & Roger, San Francisco, Cal., for plaintiffs-appellants.

Steven Woodside, San Jose, Cal., for defendant-appellee.

Before BROWNING and WRIGHT, Circuit Judges, and KUNZIG,[*] Judge, Court of Claims.

BROWNING, Circuit Judge:

The two appellant unions brought this action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, on behalf of female employees of appellee County of Santa Clara. The unions alleged that the County paid employees in predominantly female job classifications less than it paid employees in predominantly male classifications for substantially similar work.

After initial discovery, the unions sought an order under Fed.R.Civ.P. 23(b)(2) certifying three classes of employees in predominantly female job classifications.[1] While the district court agreed that a class

suit would be appropriate under Rule 23(b)(2) and that the unions had satisfied three of the four prerequisites to certification under Rule 23(a), it denied certification because the unions had failed to demonstrate that they would "fairly and adequately protect the interests of the class." *See* Fed.R.Civ.P. 23(a)(4).

■ The court based this conclusion upon two grounds: first, as the recognized representatives of the employees in the putative classes the unions had entered into collective bargaining agreements with the County containing the very pay differentials now alleged to be discriminatory; second, the unions represented "both male and female employees, whose interests may differ depending upon the remedies sought if plaintiffs' claims are sustained."[2]

Neither ground justified the court's conclusion. On the whole record the motion should have been granted.

■ It is now clear that unions may maintain actions under Title VII on behalf of their members. Indeed,

> policy considerations weigh strongly in favor of affording standing to unions which file suit to end discriminatory employment practices. The financial backing and legal expertise that unions can provide would materially advance the type of private enforcement essential to the effectiveness of Title VII.

*International Woodworkers of America v. Georgia-Pacific Corp.*, 568 F.2d 64, 67 (8th Cir. 1977).[3] However, a union seeking class

---

[*] Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation.

1. The proposed classes and the number of male and female employees in each were as follows:

| Proposed Class | Male Employees | Female Employees | Total |
|---|---|---|---|
| Department of Social Services | 297 | 887 | 1,184 |
| Clerical and Allied | 114 | 1,735 | 1,849 |
| Librarians | 23 | 89 | 112 |

2. Because the unions brought suit in their organizational capacity on behalf of their members and did not allege injury to themselves, the district court dismissed the action. This court's jurisdiction under 28 U.S.C. § 1291, therefore, is not affected by the holding of *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), that an order denying class certification is generally not appealable under § 1291 since it "does not of its own force terminate the entire litigation because the plaintiff is free to proceed on his individual claim." *Id.* at 467, 98 S.Ct. at 2457.

3. *See also Local 194, Retail, Wholesale & Dep't Store Union v. Standard Brands, Inc.,* 540 F.2d

certification in a Title VII suit must satisfy the requirements of Rule 23(a)(4) that it "will fairly and adequately protect the interests of the class." It must demonstrate that its attorneys are qualified, experienced and generally able to conduct the litigation, which is not questioned here, and that its interests are not antagonistic to those of the class.[4] Whether a particular union will fairly and adequately represent a particular class of persons in a particular case is a question of fact[5] to be determined on the basis of all of the relevant circumstances regarding the union, the class, and the case.[6] A district judge's determination as to whether representation will be fair and adequate necessarily embodies a considerable exercise of judgment and discretion and will not be disturbed unless abuse is shown.[7]

■ The record does not support the district court's inference that the unions would be inadequate class representatives. Unrebutted affidavits filed with the district court establish that a majority of the statewide officers of Local 535 are women. Women comprise between 70 and 80 percent of the members of the Santa Clara County Chapter of Local 535 and 100 percent of its officers. The constitutions of both unions bar discrimination on the basis of sex. Both unions consistently sought equal pay for equal work on behalf of their members. During negotiations leading to agreements covering the two years preceding suit, both unions demanded revision of pay scales to eliminate sexual discrimination. When the County refused, the unions filed complaints with the Equal Employment Opportunity Commission. When conciliation failed the unions filed this suit. This evidence strongly suggests the unions would be responsive to class interests.

The fact that the allegedly discriminatory pay scales were included in agreements negotiated by the unions does not support the district court's contrary inference. In this respect, the facts of this case are similar to those in *Thompson v. Board of Education,* 71 F.R.D. 398 (W.D.Mich.1976), in which the court rejected the contention that the Warren Education Association (WEA) could not represent its member teachers in a suit attacking allegedly discriminatory provisions for sick and disability leave in contracts negotiated by the association. We adopt Judge Fox's reasoning:

[T]he WEA has sufficiently shown its commitment to this action. Evidence that an education association has compromised at the collective bargaining table is not persuasive as to whether it will in fact compromise a suit to enforce the statutory or constitutional rights of its members. While it is true that the WEA has signed at least one collective bargaining agreement subject to attack in this case, I do not view such conduct as reflecting a position inconsistent with the goals of plaintiffs in this lawsuit. Indeed the evidence more accurately indicates that the WEA merely sought to avoid the necessity for engaging in this litigation by resolving the matter pursuant to collective bargaining. That it failed to succeed in this endeavor does not mean that it is any less committed to the realization of the statutory rights of its female members.

*Id.* at 406.

In this case, as in *Thompson,* the circumstances preclude an inference that inclusion

---

864, 866–67 (7th Cir. 1976). For a summary of considerations making it desirable that unions be permitted to initiate such suits see Comment, *Unions as Title VII Plaintiff Class Representatives: A Potential Conflict of Roles and a Possible Solution,* 1 Indus.Rel.L.J. 755, 757–760 (1977) (hereinafter "Comment").

4. *National Ass'n of Regional Medical Programs, Inc. v. Mathews,* 179 U.S.App.D.C. 154, 159, 551 F.2d 340, 345 (D.C.Cir. 1976); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975).

5. *Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir. 1977); *Schy v. Susquehanna Corp.,* 419 F.2d 1112, 1116 (7th Cir. 1970); *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 914 (9th Cir. 1964); Wright & Miller, Federal Practice & Procedure, § 1765, p. 622.

6. Comment, *supra,* 1 Indus.Rel.L.J. at 779–80.

7. *Morris v. McCaddin,* 553 F.2d 866, 870 (4th Cir. 1977); *Brick v. CPC Int'l Inc.,* 547 F.2d 185 (2d Cir. 1976); *Fendler v. Westgate-California Corp.,* 527 F.2d 1168, 1170 (9th Cir. 1975); Wright & Miller, Federal Practice & Procedure, § 1765, p. 623.

of the allegedly discriminatory terms of employment in the collective bargaining agreements indicates that the unions and a majority of their members approved those provisions.

It has been held in other cases of this kind that acquiescence in a collective bargaining agreement including the challenged terms of employment establishes a conflict of interest on another ground; the union's ability to prosecute the claim of discrimination vigorously is held to be compromised by the fact that the union might be liable for back pay if the suit were successful and the provisions were held to violate Title VII.[8] The County has neither advanced this argument nor filed a counterclaim against the unions in the present case. Presumably, the County recognizes that the unions could reasonably believe their vigorous efforts to correct the discrimination prior to suit through negotiations with the County and administrative proceedings before EEOC, as well as their initiation and pursuit of this suit itself would protect them from liability for back pay if the suit succeeded.[9]

■ Nor does the record support the second ground relied upon by the district court in denying the unions class representative status. There is no basis in the record for the court's conclusion that the unions would be unable to conduct this lawsuit vigorously because of a conflict between the economic interests of their male and female members. No male union member has objected to certification of the unions as class representatives. While the court assumed that male union members would suffer pecuniary injury if the pay of female employees were raised—relying on "the general budgetary constraints on units of local government"—this assumption is purely speculative. The record contains no evidence that the economic interests of male union members would in fact suffer in this or any other way because of relief that might be obtained in this action. Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification.[10] If the district court's reasoning were accepted, no union with both male and female members, or with a membership that included those of a racial or religious minority, could bring suit on behalf of members who were victims of economic discrimination. That is not the law.[11]

■ It is obvious that conflicts may exist when only part of a union's membership is in the class for which certification is sought. If a substantial issue is raised as to a union's ability to protect the interests of a particular class because of apparent and imminent conflicts the question should be thoroughly explored, usually through an evidentiary hearing.[12] In this case, however, the County was apparently content to have the issue resolved on the basis of affidavits submitted by the unions. We conclude from these affidavits that any potential economic conflict between male and female employees is too amorphous and speculative to disqualify the unions from representing the class.

■ It should be emphasized that "[a] decision as to class certification is not im-

---

8. *Patterson v. American Tobacco Co.*, 535 F.2d 257, 270 (4th Cir. 1976); *United Transp. Local 974 v. Norfolk & W. Ry.*, 532 F.2d 336, 341–42 & n. 2 (4th Cir. 1975); *Carey v. Greyhound Bus Co.*, 500 F.2d 1372, 1379 (5th Cir. 1974); *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1381–82 (5th Cir. 1974); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 79, 478 F.2d 979, 989 (D.C.Cir. 1973).

9. *Johnson v. Ryder Truck Lines, Inc.*, 555 F.2d 1181, 1182 (4th Cir. 1977); *Williams v. Norfolk & W. Ry.*, 530 F.2d 539, 543 (4th Cir. 1975).

10. *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975). *Compare Airline Stewards & Stewardesses Local 550 v. American Airlines, Inc.*, 490 F.2d 636 (7th Cir. 1973) (actual conflicts between class members created by proposed settlement terms).

11. *International Woodworkers of America v. Georgia-Pacific Corp.*, 568 F.2d 64, 67 (8th Cir. 1977).

12. *International Woodworkers of America v. Georgia-Pacific Corp.*, supra, 568 F.2d at 67; *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1124–25 (5th Cir. 1969).

mutable." *Guerine v. J. & W. Investment, Inc.,* 544 F.2d 863, 864 (5th Cir. 1977). If at any time before, during, or after trial it appears that for any reason the unions no longer fairly and adequately protect the interests of the class, class status may be withdrawn or appropriately modified.[13] One or more of the many available procedural safeguards can be brought into play to protect the absentees.[14] It will be the duty of counsel for the unions to call to the court's attention any conflicts that may develop.[15]

Reversed and remanded.

---

**13.** *Grigsby v. North Miss. Medical Center, Inc.,* 586 F.2d 457, 462 (5th Cir. 1978); *Gibson v. Local 40, Supercargoes & Checkers,* 543 F.2d 1259, 1264–65 (9th Cir. 1976); 7 Wright & Miller, Federal Practice & Procedure: Civil § 1765, p. 625–6.

**14.** *Sperry Rand Corp. v. Larson,* 554 F.2d 868, 874 n. 9 (8th Cir. 1977), *Blackie v. Barrack, supra,* 524 F.2d at 909, 911; *Green v. Wolf Corp.,* 406 F.2d 291, 298 n. 10 (2d Cir. 1968); Comment, *supra,* 1 Indus.Rel.L.J. at 781, 786–87.

**15.** *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1176 (5th Cir. 1978); *National Ass'n of Regional Medical Programs, Inc. v. Mathews,* 179 U.S.App.D.C. 154, 160 n. 31, 551 F.2d 340, 346 n. 31 (D.C.Cir. 1976).