Jeffrey **PREZANT**, Saul Gevertz, Toni Fenchel and John Josef Sedelmaier, Objectors Below, Appellants,

v.

Joseph De **ANGELIS** and Mary Jane Regele, on behalf of themselves and all others similarly situated, Plaintiffs Below, Appellees,

v.

**SALTON/MAXIM HOUSEWARES, INC.**, Leonhard Dreimann, David C. Sabin, William B. Rue, Dean Witter Reynolds, Inc., and Mesirow Financial Inc., Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: Nov. 29, 1993.
Decided: Feb. 3, 1994.

Joseph A. Rosenthal (argued), and Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, for Objectors Below, appellants.

Brian Glancy, Schlusser, Reiver, Hughes & Sisk, Wilmington, and Robert B. Matusoff (argued), Gene Mesh & Associates, Cincinnati, OH, for plaintiffs below, appellees.

Kenneth J. Nachbar (argued), Morris, Nichols, Arsht & Tunnell, Wilmington, and Harold C. Hirshman and Christopher Q. King, Sonnenschein, Nath & Rosenthal, Chicago, IL, for defendants below, appellees.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from a Court of Chancery approval of a class action settlement. The court approved the settlement as being fair, reasonable and adequate and in the best interests of the class, over the objection of appellants. However, the court did not determine that the named plaintiff was an adequate representative of the class. Because adequacy of a class representative is a requirement of Court of Chancery Rule 23 and is constitutionally mandated, a determination to that effect is essential to court approval of a class action settlement. Accordingly, without reaching the merits of the settlement, we reverse and remand for an appropriate determination.

I

This case arises out of the initial public offering ("IPO") of Salton/Maxim Housewares, Inc. ("Salton"), a Delaware corporation headquartered in Illinois. Salton designs and markets a broad array of small kitchen appliances and personal and beauty care appliances.

In order to pay off outstanding debt, Salton's management decided to offer 2,300,000 shares of stock in the corporation to the public. Those shares were marketed pursuant to a prospectus dated October 9, 1991 ("the Prospectus"). The Prospectus advised that Salton had achieved a 100% increase in revenues in each of the two preceding fiscal years. The offering was fully subscribed by October 9, 1991, at $12 per share.

On November 27, 1991, Salton announced that its revenues for the quarter ending De-

cember 31, 1991, would likely be substantially unchanged from the same quarter during the prior year. Following that announcement, the price of Salton's shares fell from the prior day's closing price of $9 per share to $6 per share. Two days after this announcement, the first of nine class action suits alleging violations of the federal securities laws was brought in the United States District Court for the Northern District of Illinois. These actions are presently active and were consolidated on April 27, 1992, under the caption *In re Salton/Maxim Securities* ("the Illinois action").

The complaint in the Illinois action, as amended, alleges that defendants, Salton, several of its top executives, and the lead underwriters of the IPO, violated sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o, by failing to disclose material facts in the Prospectus. The allegations focus on two alleged disclosure deficiencies. The first is Salton's failure to disclose a decline in its backlog of unfilled orders. The Prospectus stated that Salton's backlog amounted to approximately $47 million as of June 30, 1991. The Prospectus failed to disclose that Salton's backlog allegedly had decreased to $24 million by October 9, 1991, the date the Prospectus was issued. The second allegation is that Salton failed to disclose that its financial resources were insufficient to develop products and to maintain adequate inventories for the forthcoming 1991 Christmas season. The defendants deny that any disclosure violations occurred.

The objectors to the settlement in the Court of Chancery, appellants here, are among the plaintiffs in the Illinois action. They allege that the plaintiffs in the Illinois action began preliminary settlement discussions which quickly reached an impasse when defendants' settlement offer of $1.2 million was rejected. Although defendants concede that an offer of settlement was made, they claim it did not exceed $1 million. The objectors claim that the impasse led to the filing of this action.

On January 6, 1992, Joseph De Angelis, brought a purported class action against defendants in the United States District Court for the Eastern District of Pennsylvania.

Objectors allege that De Angelis' counsel attempted to voluntarily dismiss that suit without court approval, in violation of Federal Rule of Civil Procedure 23(e), when he learned of the earlier filed Illinois action because he realized that his suit would likely be transferred to Illinois by the federal Judicial Panel on Multi–District Litigation. De Angelis' counsel has admitted to the Court of Chancery that he did not want to be part of the Illinois litigation.

On January 28, 1992, this action was filed in the Court of Chancery with De Angelis as the sole named plaintiff. It is undisputed that De Angelis was not consulted in connection with the decision by his counsel to withdraw the Pennsylvania action and commence the Delaware action. The allegations in this action mirror the claims in the Illinois action, although the initial Delaware complaint contained only state law fraud claims. The Delaware complaint also stated that De Angelis bought his stock in the IPO and held it through the end of the class period, an allegation which proved false after objectors deposed De Angelis and learned that he sold his shares for $10.75 per share on October 23, 1991—well before the November 27th announcement.

It is undisputed that De Angelis' counsel began settlement negotiations within two weeks of filing the Delaware action. De Angelis' counsel never made any formal document discovery demands, relying instead on documents voluntarily produced by the defendants. He undertook no sworn depositions but instead conducted informal, unsworn "interviews" with Salton personnel. An interview with the representative of the underwriter primarily responsible for the offering was not conducted until after the Stipulation of Settlement was signed.

An agreement in principle was reached with Salton on May 11, 1992, to settle the case for $1,290,000, but De Angelis' counsel agreed to reduce the amount of the settlement to $1,225,000 after Salton's insurer objected. De Angelis' counsel entered into the settlement agreement in principle without consulting a damages expert. Indeed, it was not until over three months after the Memorandum of Understanding of Settlement was

signed that De Angelis' counsel obtained the opinion of a damages expert that the proposed settlement was fair.

On May 5, 1992, shortly after learning of the settlement negotiations in the Delaware action, certain of the plaintiffs in the Illinois action filed suits in the Court of Chancery based on the same events. Those plaintiffs immediately moved to consolidate their Delaware actions with the earlier-filed De Angelis action and sought to have their attorneys designated as the lead counsel for all the suits, including the De Angelis action. This maneuver was patently designed to block any settlement negotiations between De Angelis and the defendants so that defendants would be compelled to negotiate with plaintiffs in the Illinois action. The Court of Chancery, while consolidating the cases for trial, refused to order the cases merged or to designate lead counsel for the consolidated cases, thereby thwarting the attempt of the Illinois plaintiffs to control the Delaware actions as well.

After a Stipulation of Settlement in this case was signed on September 4, 1992, and notice was given to purported class members, De Angelis' complaint was amended to add Mary Jane Regele as a plaintiff and to add claims alleging violations of sections 11 and 15 of the Securities Act of 1933. Regele, represented by the same counsel as De Angelis, is alleged to have purchased stock in the IPO and held it throughout the class period. The complaint was amended without leave of the court, pursuant to Chancery Rule 15(a), because, unlike the vigorously contested Illinois action in which defendants filed a motion to dismiss, defendants have never filed a responsive pleading in this action.[1]

Under the terms of the Stipulation of Settlement, Salton would pay $1,225,000 into a settlement fund for the benefit of the class of shareholders who bought Salton stock in the IPO or on the market between October 9 and November 27, 1991. The settlement is a so-called "global settlement" with an "opt-out" provision; that is, it purports to release not just the claims asserted by De Angelis in this suit but also all other claims arising out of the IPO, including those asserted in the other Delaware actions and in the Illinois action, unless a class member opts-out of the settlement. Defendants also agreed not to oppose De Angelis' application for attorneys' fees and expenses not to exceed 25% of the settlement fund.

Four of the plaintiffs in the Illinois action, two of whom are plaintiffs in the Delaware actions, objected to the proposed settlement and application for attorneys' fees. The objectors argued below, and on appeal, that the settlement is grossly unfair to the class. They also argue that the process by which the settlement was reached was fatally tainted and that, if the settlement stands, it will encourage plaintiffs' attorneys to file actions in courts other than the one in which the initial action was filed in an effort to engage in impermissible forum shopping in order to negotiate a "low-ball" settlement and obtain a quick fee award. Additionally, objectors challenge De Angelis' adequacy as a class representative.

■ The Court of Chancery found that "[s]everal aspects of the settlement process in this action are disturbing and, as a result, the terms of the settlement, as the end-product of that process, must be given the closest scrutiny." The court was concerned by the existence of the earlier-filed Illinois action covering similar claims, which significantly weakened De Angelis' bargaining position with defendants. Delaware courts, in the interests of comity and judicial economy, will normally stay after-filed suits when previously-filed suits stating similar claims are pending in another court. *Local Union 199, Laborers' Int'l Union of North America v. Plant*, Del.Supr., 297 A.2d 37 (1972). *See also ANR Pipeline Co. v. Shell Oil Co.*, Del. Supr., 525 A.2d 991, 992 (1987); 21 C.J.S. *Courts* § 211. This is particularly so where the primary claims, as here, are based on federal laws and a federal action is already pending in a federal court. *Plant*, 297 A.2d at 38. Thus, the court noted, De Angelis could not realistically have hoped to try this case but only to settle it with the further hope of receiving a fee award. Accordingly,

1. Where appropriate, references to De Angelis shall be deemed to include Regele.

De Angelis and his counsel were in a significantly weaker bargaining position than that of the Illinois plaintiffs.

Additionally, the court found it "highly suspicious" that defendants did not seek to stay this action, did not move to dismiss it, and did not move to have class certification denied as they did in Illinois. De Angelis' initial complaint was particularly vulnerable to a motion to dismiss because it asserted only state common law fraud claims, which are not maintainable in a class action in Delaware. *Gaffin v. Teledyne, Inc.*, Del. Supr., 611 A.2d 467 (1992). These facts led the court to assume that defendants preferred De Angelis as an adversary.

As a result of these "deficiencies in the settlement process," the Court of Chancery subjected the proposed settlement to "heightened scrutiny." Nonetheless, it found, from an objective review of the settlement terms, that it was in the best interests of the class members. The court, therefore, approved the settlement. However, because of the troubling and unusual facts of this case, the Vice Chancellor, in his discretion, refused to award any attorneys' fees to De Angelis' counsel. From the approval of the settlement, objectors appeal. De Angelis and Regele have dismissed their cross-appeal from the denial of attorneys' fees. Therefore, if the settlement stands, the class will receive the entire settlement fund, less expenses.

## II

Objectors raise several claims on appeal, but we address only one. Objectors claim the Court of Chancery erred as a matter of law in approving a settlement negotiated by an inadequate class representative.[2] The legal issue thus presented is whether an adequate class representative is a *sine qua non* for approval of a class action settlement.

Court of Chancery Rule 23, which is modeled on its federal counterpart, governs the procedures for maintenance of a class action. The Rule is divided into five subsections. Subsection (a) contains the requisites to maintenance of a class action. Subsection (b) divides class actions into three categories. Subsection (c) concerns class certification, notice, judgment, and partial class actions. Subsection (d) allows the court to enter certain types of orders in class actions. Subsection (e) governs dismissal or settlement of class actions.

Under the Rule, "a condition precedent to the certification of a class action is a two-step analysis. The first step requires that the action satisfy all *four* of the prerequisites mandated by subsection (a) of the rule." *Nottingham Partners v. Dana*, Del.Supr., 564 A.2d 1089, 1094 (1989). Subsection (a) provides:

> **Requisites to Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If, and only if, the provisions of subsection (a) are satisfied, the next step is to properly fit the action within the framework provided in subsection (b). *Nottingham Partners*, 564 A.2d at 1095.[3]

---

**2.** Defendants claim that this issue was not raised below and thus cannot be pursued on appeal. Supr.Ct.Rule 8. This assertion is belied by the record. Indeed, defendants, in their brief filed in support of the settlement in the Court of Chancery, observed that "[n]on-settling plaintiffs (objectors) [contend] that the Court should not certify the action as a class action for purposes of settlement because ... Mr. De Angelis is not a proper representative of the entire Class." This is poignant evidence that the issue of De Angelis' adequacy as the class representative was raised below and has thus been properly preserved for appeal.

**3.** Subsection (b) explicitly states that "[a]n action may be maintained as a class action *if the prerequisites of paragraph (a) are satisfied....*" (emphasis added). Therefore, it is clear that the requirements of subsection (a) must be satisfied before a class action can be categorized under subsection (b).

Subsection (b) divides class actions into three categories based upon the wrongs alleged and/or the relief sought.

Subdivision (b)(1) applies to class actions that are necessary to protect the party opposing the class or the members of the class from inconsistent adjudications in separate actions. Subdivision (b)(2) applies to class actions for class-wide injunctive or declaratory relief. Subdivision (b)(3) applies when common questions of law or fact predominate and a class action would be superior to other means of adjudication.

*Id.* (footnotes, citations, and quotation marks omitted).

█ If the action is properly maintainable as a class action under subsections (a) and (b), the remainder of Rule 23 governs the conduct of the proceedings. Of the subsections relevant to this appeal, subsection (c)(1) governs class certification:

As soon as practicable after the commencement of an action brought as a class action, the Court shall determine by order whether it is to be so maintained. An order under this paragraph may be conditional, and may be altered or amended before the decision on the merits.

Subsection (c)(1) thus provides the mechanism for determining compliance with subsections (a) and (b). The rule appears to contemplate a determination of whether an action is properly maintainable as a class action at an early stage of the litigation, not at some later date, *i.e.*, in connection with a settlement. *See In re Franklin National Bank Securities Litigation*, 2d Cir., 574 F.2d 662, 671–72 n. 6 (1978), *modified*, 599 F.2d 1109 (1979).

Subsection (c)(2) requires that notice be sent to members of the class in any action, such as this one, maintained under subsection (b)(3), although it does not specify a time frame as does subsection (c)(1). Additionally, subsection (c)(2)(A) requires that all potential class members of a (b)(3) action be given the right to opt-out of the class. The United States Supreme Court has held that, in an action primarily for money damages, such as this (b)(3) action, the requirements of notice and the opportunity to opt-out are of a

constitutional due process magnitude. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 2974, 86 L.Ed.2d 628 (1985). *See Nottingham Partners*, 564 A.2d at 1098.

█ Subsection (e) requires notice and court approval before any class action may be compromised or dismissed with prejudice. As a general proposition, Delaware law favors settlements. *Rome v. Archer*, Del. Supr., 197 A.2d 49, 53 (1964); *Nottingham Partners*, 564 A.2d at 1102. However, the settlement of a class action is unique because the fiduciary nature of the class action requires the Court of Chancery to participate in the consummation of the settlement to the extent of determining its intrinsic fairness. *Id.* The court's function is to consider the nature of the plaintiff's claim, the possible defenses thereto, the legal and factual circumstances of the case, and then to apply its own business judgment in deciding whether the settlement is reasonable in light of these factors. *Id., quoting Polk v. Good*, Del. Supr., 507 A.2d 531, 535 (1986).

Subsections (c)(2) and (e) both presuppose the existence of a properly maintainable class action, *i.e.*, one that satisfies all the requisites of subsection (a) and has been properly categorized under subsection (b). Such determination is to be made pursuant to subsection (c)(1). As noted above, subsection (c)(1) contemplates that class certification proceedings occur early in the litigation, not in connection with a settlement. Here, however, formal class certification proceedings never occurred. The Vice Chancellor instead utilized, as is commonly done, a temporary settlement class mechanism. The dispute in this case centers on the use of the temporary settlement class device and its effect on the requirement of an adequate class representative under subsection (a)(4).

Courts have recognized the utility of establishing temporary classes to facilitate settlements. In such situations, the court does not make the explicit determination, contemplated by subsection (c)(1), that the requisites of subsections (a) and (b) have been satisfied before permitting a proposed settlement to proceed toward consummation. Instead, the

parties stipulate that the action may be maintained as a class action for settlement purposes only, with court approval pursuant to subsection (d),[4] in conjunction with the mailing of notice to class members as required by subsection (e), and a date is set for a court hearing on the proposed settlement. At the hearing, any objections to the proposed settlement are heard, including objections to the adequacy of representation. *See* 2 Hubert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 11.27 (3d ed. 1992) ("*Newberg*"); *In re Beef Industry Antitrust Litigation,* 5th Cir., 607 F.2d 167, 173–78 (1979), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981).

The use of temporary settlement classes has been criticized, most notably by the Federal Judicial Center's *Manual for Complex Litigation* (5th ed. 1982) ("The *Manual*"), which has been superseded by *Manual for Complex Litigation, Second* (1985) ("The *Manual, Second*"). The *Manual* took the position that "tentative classes for the purposes of settlement ... should not be formed." § 1.46 at 60. The *Manual, Second* disapproves of temporary settlement classes, and suggests courts should use great caution when utilizing them. § 30.45 at 243. *See also,* Arthur R. Miller, *An Overview of Federal Class Actions: Past, Present and Future* 60 (Fed.Jud.Center, Dec. 1977) ("there really is a serious problem of the judge not having enough information prior to certification to do a completely effective job under Rule 23(e)").

■ The principal criticism of the temporary settlement class procedure is that it facilitates premature, inadequate, and perhaps collusive settlements because plaintiffs' counsel is under strong pressure to conform to the defendants' wishes at the early stages of the litigation. *In re Beef Industry Antitrust Litigation,* 607 F.2d at 176; *Ace Heating & Plumbing Co. v. Crane Co.,* 3d Cir., 453 F.2d 30, 33 (1971). This is so because a defendant may seek to negotiate with another class member in the event negotiations stall. *See id.* Indeed, that is exactly what

occurred here. Additionally, when contested, class certification proceedings present a potentially significant obstacle for a plaintiff to overcome in an attempt to litigate a claim on the merits. These concerns reflect the unique character of class actions, in which the financial interests of the individual class members are frequently small while those of the class lawyers are great. When competition among different sets of plaintiffs' counsel exists, as it does here, there is the ever present danger that unscrupulous counsel may "sell out" the class in order to receive a fee. *See Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago,* 7th Cir., 834 F.2d 677, 681 (1987). However, we believe Rule 23(e)'s requirement that court approval be obtained before any settlement is consummated and the Court of Chancery's role in reviewing the settlement provide adequate safeguards against impropriety by unscrupulous counsel. *See Nottingham Partners,* 564 A.2d at 1102.

The debate concerning the propriety of temporary settlement classes has spawned opinions critical of the process but declining to find that use of the procedure violates Rule 23. *See In re Beef Antitrust Litigation,* 607 F.2d at 173–78; *Weinberger v. Kendrick,* 2d Cir., 698 F.2d 61, 72–73 (1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Mars Steel Corp.,* 834 F.2d at 680–81. Professor Newberg advocates the use of temporary settlement classes, finding them to be a useful tool to "encourage and facilitate amicable settlements of litigation...." *See* 2 *Newberg,* § 11.27 at 11–53. *Accord In re A.H. Robbins Co., Inc.,* 4th Cir., 880 F.2d 709, 739–40, *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989).

We recognize the beneficial aspects of permitting temporary settlement classes. They allow several steps of litigation to be collapsed into one. Class certification pursuant to Rule 23(c)(1) is deferred until the settlement hearing, upon notice to the class. Class certification proceedings, if contested, can be time consuming and costly. Re-

---

**4.** Subsection (d) authorizes the court to enter appropriate orders determining the course of proceedings, including those forming temporary

settlement classes. 2 Hubert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 11.27 at 11–44 (3d ed. 1992).

sources that would otherwise be allocated to such proceedings can instead be used to achieve a resolution of the entire dispute through settlement. While a defendant might well challenge certain aspects of class certification at an early stage in the litigation in order to avoid or limit potential class-wide liability, that same defendant benefits from the broadest possible class at settlement because of the protection against further liability. Class members benefit as well. Individuals who might not be members of a class as certified after contested proceedings, may well be included in a broad class at settlement and therefore be entitled to share in the recovery. If a class is certified after proceedings held early in the litigation, all class members would have their claims extinguished if the complaint is subsequently dismissed in a Rule 12(b)(6) or similar context. However, when class certification proceedings are deferred, a dismissal prejudices only the named plaintiff.

■ Judicial economy is served by a comprehensive settlement hearing rather than piecemeal litigation. Temporary settlement classes foster settlement of contested issues, a favored result under Delaware law. *Rome v. Archer*, 197 A.2d at 53. For these reasons, we approve the use of temporary settlement classes generally, and condone the use here, so long as the strictures of Rule 23 are ultimately satisfied. *See generally*, 2 *Newberg*, § 11.27. *See also, In re Beef Antitrust Litigation*, 607 F.2d at 173–78 (collecting cases and commentaries).

■ Whatever their beneficial effects, we do not view the use of temporary settlement classes as permitting the Court of Chancery to circumvent the need to test the propriety of the class action through application of the specific criteria of Rule 23. We agree with the following analysis by Professor Newberg of the temporary settlement class and the effect of its use.

> [T]he temporary settlement class [is] nothing more than a tentative assumption indulged in by the court to facilitate the amicable resolution of the litigation, rather than [ ] some sort of conditional class ruling under Rule 23 criteria. The actual class ruling is deferred in these circumstances until after a hearing on the settlement approval, following notice to the class. At that time, the court in fact applies the class action requirements to determine whether the class settlement should be approved. Viewed in this light, a court ruling creating a temporary class settlement at the request of the parties is not a formal class ruling.

*Newberg*, § 11.27 at 11–50. When using the temporary settlement class device, a formal class ruling may be deferred until the settlement hearing. However, we believe that such a ruling must be made before a settlement can be approved.

■ The adequacy of the class representative has a constitutional dimension. The Due Process Clause of the United States Constitution requires "that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 2974, 86 L.Ed.2d 628 (1985), *citing Hansberry v. Lee*, 311 U.S. 32, 42–43, 45, 61 S.Ct. 115, 118–119, 120, 85 L.Ed. 22 (1940). This constitutional requirement is embodied in Rule 23(a)(4), which requires that the named plaintiff "fairly and adequately protect the interests of the class." *Nottingham Partners*, 564 A.2d at 1098 n. 18; *Nat'l Ass'n of Regional Medical Programs, Inc. v. Mathews*, D.C.Cir., 551 F.2d 340, 345–46, (1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977); *Gonzales v. Cassidy*, 5th Cir., 474 F.2d 67, 74–75 (1973). *See also*, 1 *Newberg*, § 4.46 at 4–185 ("It is settled that adequacy of representation is the quintessence of due process in class actions.").

■ The rationale underlying the constitutional basis for adequate class representation was articulated by the Court of Appeals for the District of Columbia Circuit:

> Class actions involve the delegation of authority to a named representative to pursue a common goal. In this pursuit, it is not only the duty of the class representative to ensure the absent members' interests are adequately protected; it is a responsibility that the process of class adju-

924

dication as a whole must shoulder. In this regard one court has noted that:

[u]nless the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by the other members of the class, it would be inequitable to recognize plaintiffs as representative, and a violation of due process to permit them to obtain a judgment binding absent plaintiffs.

*Mathews,* 551 F.2d at 346 (footnote omitted), *quoting Dierks v. Thompson,* 1st Cir., 414 F.2d 453, 456 (1969). Indeed, the evil of inadequate representation is illustrated here, where objectors had already rejected a settlement offer in the Illinois action similar to the one negotiated by De Angelis' counsel.[5] Accordingly, we do not believe that a class action settlement can constitutionally bind absent class members without a judicial determination that the adequate representation requirement of Rule 23(a)(4) has been satisfied.

■■■ We therefore reject defendants' assertion that notice and the opportunity to opt-out, without adequate representation, satisfies due process requirements. Notice is no substitute for extensive document examination, depositions of adverse witnesses, securing expert advice on complicated issues, and aggressive negotiation at arms-length. The same holds true for opt-out rights, which are infrequently utilized and usually economically impracticable. Due process requires notice, the opportunity to be heard and to participate in the litigation, the right to opt-out, *and* adequate representation before an absent class member can be bound by a settlement in a class action predominately for money damages. *Shutts,* 472 U.S. at 812, 105 S.Ct. at 2974–75.[6]

■■■ Defendants argue that court approval of a class action settlement carries with it an implicit determination that the action complies with the Rule 23 criteria, including adequate representation. This position is supported by several cases. *See In re Beef Industry Antitrust Litigation,* 607 F.2d at 177; *Mars Steel Corp.,* 834 F.2d at 680 (no formal determination by trial judge that Rule 23 criteria were satisfied). There are at least two problems with this approach. First, as the United States Supreme Court has held, "actual, not presumed, conformance with Rule 23(a) [is] indispensable." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). *See Malchman v. Davis,* 2d Cir., 706 F.2d 426, 433 (1983), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986) ("There is no doubt that the district court must make an independent evaluation of whether the named plaintiffs were adequate representatives of the class...."). Moreover, the plain language of 23(c)(1) clearly contemplates an explicit finding that the action satisfies the Rule 23 criteria and is thus properly maintainable as a class action ("the Court shall determine by order whether it is to be so maintained."). The failing of the implicit determination approach is highlighted here, where defendants concede that the Vice Chancellor made findings from which it may be inferred that De Angelis is an *inadequate* class representative. Accordingly, when claims of absent class members are being compromised, the appropriate course is for the Court of Chancery to make an explicit finding on the record that the action satisfies the criteria of Rule 23 and is thus properly maintainable as a class action.

5. We do not intend to imply that acceptance of a settlement offer similar to one previously rejected by another establishes inadequate representation *per se.* The point is that only an adequate representative can rightfully be in the position to determine what is satisfactory compensation for absent class members for the wrongs alleged in the complaint. *Dierks,* 414 F.2d at 456.

6. We find unpersuasive defendants' reliance on *In re Four Seasons Securities Laws Litigation,* 10th Cir., 502 F.2d 834, 843, *cert. denied,* 419 U.S. 1034, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974) and other pre-*Shutts* cases holding that notice

and/or opt-out rights alone, without adequate representation, satisfies due process. Such holdings have been criticized by commentators, *see* Comment, *The Importance of Being Adequate: Due Process Requirements in Class Actions Under Federal Rule 23,* 123 Pa.L.Rev. 1217 (1975) and 1 *Newberg,* § 4.46 at 4–186, are inconsistent with other pre-*Shutts* cases cited herein, and do not survive *Shutts. See* Arthur R. Miller & David Crump, *Jurisdiction and Choice of Law in Multistate Class Actions After Phillips Petroleum Co. v. Shutts,* 96 Yale L.J. 1, 13 n. 81 (1986).

We also reject defendants' assertion that the Court of Chancery's use of heightened scrutiny in its evaluation of the merits of the settlement was a proper substitute for an adequate class representative. In addition to the due process concern, if, in fact, there was no adequate class representative, the entire settlement process was tainted. The determination made by the Court of Chancery in approving the settlement was done on the basis of the record created by the parties. If the record was not made by an adequate representative of the class, it is, to say the least, suspect. This is so because an adequate representative, vigorously prosecuting an action without conflict and bargaining at arms-length, may present different facts and a different settlement proposal to the court than would an inadequate representative. *See Dierks,* 414 F.2d at 456. Accordingly, the Court of Chancery's use of heightened scrutiny does not cure a failure to determine if De Angelis is an adequate class representative.

Therefore, we hold that, *in every class action settlement,* the Court of Chancery is required to make an explicit determination on the record of the propriety of the class action according to the requisites of Rule 23(a) and (b). This determination, which is equivalent to class certification, may be made at the conclusion of the settlement hearing when a temporary settlement class has been established to facilitate effectuation of a proposed settlement, or it may be made at some earlier time, such as in conjunction with notice to the class.[7] However, *class certification is required in every class action settlement.* To the extent that current Court of Chancery practice is to the contrary, such practice is disapproved.

We do not believe that compliance with this requirement will be burdensome on the parties or the court. In the usual case in which there is no objection to a proposed settlement on the grounds that the action fails to satisfy the Rule 23 criteria, the Court of Chancery, in addition to performing its usual evaluation of the merits of the settlement, need only make a finding on the record that each of the provisions of Rule 23(a) has been satisfied and that the action may be maintained according to one or more of the provisions of Rule 23(b). The court may make such a finding on the basis of a record containing sworn testimony, by affidavit and/or deposition of the appropriate persons. When, as here, the settlement is challenged as not complying with one of the Rule 23 requirements, the Court of Chancery shall articulate on the record its findings regarding the satisfaction of the Rule 23 criteria and supporting reasoning in order to facilitate possible appellate review. *Plummer v. Chemical Bank,* 2d Cir., 668 F.2d 654, 659 (1982). Such determinations are, of course, within the sound discretion of the Court of Chancery and will be reviewed only for abuse of discretion. *See Nottingham Partners,* 564 A.2d at 1102.

This approach will serve to benefit both class members and defendants. Class members, usually stockholders in a Delaware corporation, will, in all cases, have their interests protected by the requirement that their claims cannot be compromised without both a judicial determination that the Rule 23 criteria have been satisfied, as well as the standard review of the merits of the settlement to determine its intrinsic fairness. Such a determination will include a finding that their due process right to adequate representation has in fact been satisfied. Defendants will be protected from a possible collateral attack on the validity of the settlement by a class member claiming the settlement did not meet the requirements of Rule 23. This protection

7. De Angelis and defendants sought to have the Court of Chancery designate De Angelis as an adequate class representative in connection with notice to the class when the stipulation of settlement was reached. Objectors objected to the proposed order and the court did not enter it. While the sequence of events is not clear, it appears that the proposed order was amended to delete the portion designating De Angelis as an adequate class representative. That amended order was entered by the Court of Chancery. Because the original proposed order was not entered, it can be inferred that the court and/or the parties may have opted to defer the adequate representative determination until after the settlement hearing, consistent with the approach approved herein. However, the court never made the determination that De Angelis was an adequate class representative, as it was required to do *at some point.*

will help insure that the final release sought by defendants in settlements is indeed final.

Finally, we note the contention that the addition of Regele, who held her stock throughout the class period, as a named plaintiff cured the problem of adequacy of class representation. This assertion cannot be taken seriously. Regele was added as a plaintiff *after* the settlement was negotiated and notice was sent to the class. Thus, she could not have adequately represented the class during settlement negotiations. Moreover, Regele is represented by the same counsel as De Angelis, and objectors vehemently argue that, for the reasons set forth in Part I of this opinion, the interests of such counsel were in conflict with those of the class. For these reasons, Regele's addition as a named plaintiff is of no consequence.

■ It is undisputed that the Vice Chancellor did not make an explicit determination that De Angelis is an adequate representative of the class he purports to represent. Indeed, defendants concede that it can be inferred from the Vice Chancellor's findings that De Angelis is an *inadequate* representative of the class. If that be the case, he cannot represent the class and the proposed settlement cannot be approved.

Our ruling on the Court of Chancery's failure to determine the adequacy of the class representative renders unnecessary consideration of objectors' claims that the settlement should not have been approved because of blatant forum-shopping and the meagerness of the settlement fund. De Angelis' conduct in attempting to pursue his claim in Delaware, with defendants' acquiescence, cannot be considered until his status as an adequate class representative is resolved. Consideration of the merits of the settlement can occur only after the requisites of Rule 23 have been satisfied. Accordingly, the decision of the Court of Chancery approving the settlement must be REVERSED and the matter REMANDED for further proceedings consistent with this opinion.