Barry BLANK, on behalf of himself and all others similarly situated, Plaintiff,

v.

William BELZBERG, Hyman Belzberg, Keenan Behrle, Bruno Dispirito, Roy Doumani, Barbara C. George, Fred Kayne, and Westminster Capital, Inc., Defendants.

C.A. No. 19567.

Court of Chancery of Delaware. New Castle County.

Submitted March 31, 2003.

Decided June 18, 2003.

Craig B. Smith, David A. Jenkins, Smith Katzenstein & Furlow LLP, Wilmington, Delaware; Matthew M. Houston, Wechsler Harwood LLP, New York, New York, for Plaintiff Barry Blank.

Kevin R. Shannon, John M. Seaman, Potter Anderson & Corroon LLP, Wilmington, Delaware, for Defendants William Belzberg, Hyman Belzberg, Keenan Behrle, Bruno Dispirito, and Westminster Capital, Inc.

David C. McBride, Danielle B. Gibbs, Young Conaway Stargatt & Taylor, Wilmington, Delaware, for Defendants Roy Doumani, Barbara C. George, and Fred Kayne.

Fred Lowenschuss, Santa Barbara, California, Objector, pro se.

## *OPINION*

LAMB, Vice Chancellor.

### I.

The plaintiff in this action is Barry Blank, who is the owner of 349,300 shares of Westminster, Capital, Inc. Blank brought this action on behalf of himself and the class of persons who owned Westminster common stock between April 18, 2002 and June 21, 2002, and their successors in interest, assignees or transferees (other than the defendants). The defendants are Westminster, William Belzberg, Hyman Belzberg, Keenan Behrle, Bruno

DiSpirito, Roy Doumani, Barbara C. George, and Fred Kayne. Each of the individuals named as a defendant was a director of Westminster at the relevant time.

The action concerns a series of transactions by which Westminster acquired a substantial portion of its common shares held by persons other than William Belzberg, Hyman Belzberg, Keenan Behrle (the "Management Shareholders") and their affiliates. In the first of these transactions, Westminster paid $2.80 per share to buy a large block of common shares from Gibralt Capital Corp., an entity controlled by Samuel Belzberg, William and Hyman's brother. Immediately thereafter, Westminster made the first of two self-tender offers to its public stockholders, also priced at $2.80 per share. As a result of these offers, it purchased an additional 1,593,022 shares of its common stock, or approximately 70% of the shares held by the class. Taken together, these issuer repurchases caused the Management Shareholders' ownership interest in Westminster to increase from just over 50% to approximately 85%. Blank did not tender his shares in the tender offer, and as a result of the combined issuer repurchases, Blank's 349,300 shares now represent more than 6% of the shares outstanding.

On April 19, 2002, Blank filed a complaint alleging that the self-tender was part of an unlawful scheme to freeze-out the public minority at an unfair price. The complaint asserts that the Management Group's "domination of the Company's corporate affairs resulted in the tender offer being made which will eliminate public ownership of Westminster and increase the ownership interests of the [Management] Group–all at a value to the Westminster stockholders substantially below the fair or inherent value of the Compa-

ny." The complaint then challenges the price at which the self-tender offer was to be made as unfair and alleges that the result of the proposal would be to deny the public stockholders "their right to share proportionately in the true value of Westminster's valuable assets, profitable business, and future profits and earnings." The original complaint did not contain any allegations regarding any of the disclosure documents filed by Westminster in connection with the proposed tender offer.

On April 29, 2003, the court heard and denied the plaintiff's motion for expedited proceedings because that motion was largely premised on allegations of fact relating to disclosures that had not yet been incorporated into a pleading. Shortly thereafter, the plaintiff filed an amended complaint; nevertheless, it was not until May 8, 2002 that the renewed motion for expedited proceedings was brought before the court. At that time, the court denied the relief and refused to schedule the motion for preliminary injunction since tender offer was then due to close on May 16, 2002 and, the court concluded, the plaintiff had not acted with sufficient diligence in pursuing his claim for injunctive relief.

The court made no determination relating to the merits of the amended complaint, which charged that the issuer tender offer was structurally coercive for, among other reasons, the absence of any proposal for a second-step transaction. Instead, stockholders were allegedly being forced to tender by the threat of either (i) being frozen into an illiquid minority position in a corporation whose shares were no longer listed or traded on a national securities exchange, or (ii) being frozen out in a later transaction at an unfair and inadequate price. The amended complaint also challenged the candor and completeness of the company's tender offer materials.

Following the tender offer, Blank and his attorneys engaged in lengthy and, ultimately, fruitful settlement negotiations with the defendants. Under the terms of the Stipulation of Settlement dated January 7, 2003, the defendants will be required to do the following: (i) pay the class members who tendered an additional $.20 per shares for each share tendered; (ii) buy Blank's 349,300 shares at $3 per share, and (iii) consummate a short-form merger in which the remaining shares of Westminster common stock are converted into the right to receive $3 per share in cash. Each of these payments will be reduced, *pro rata,* to account for the plaintiff's counsels' reasonable fees and expenses, as may be awarded by the court.

On January 13, 2003, the court entered a Scheduling Order approving the form of Notice to be sent to the class members. That notice informed class members of information relating to the nature of the action and the terms of the proposed settlement. It also disclosed that plaintiff's counsel intended to apply for an allowance of fees and expenses in the amount of $125,000. The Notice was disseminated and resulted in the filing of one objection, by Mr. Fred Lowenschuss (the "Objection"). Lowenschuss objects to the settlement and to the request by the plaintiff's counsel to be awarded their fees and expenses out of the amounts payable to the class.

## II.

The Objection focuses on a claimed conflict of interest between or among those members of the class who tendered, Blank (who has agreed to sell), and the other minority shareholders who have neither tendered nor consented to sell. Lowenschuss first argues that there is a conflict within the class between those who tendered and those who did not. The basis for this argument, apparently, is that "the officers and directors who are defendants in this action have at all times steadfastly asserted to all shareholders that the legal action brought by Barry Blank is totally without merit." Presumably, since those claims are said to be non-meritorious, there is no reasonable basis for Westminster to agree to pay an additional $.20 to those who tendered. Lowenschuss also argues that, because Blank did not tender his shares, he cannot represent those who did. Finally, he argues that the proposed short-form merger is the result of collusion between Blank and the defendants and is "designed to take the company private on behalf of the insider officers and directors at the expense of the objecting shareholders." In this connection, he argues that the proposed settlement is "a new tender offer" and that he cannot assess the fairness of that offer since he has not yet received all of the information that will be disseminated to stockholders in connection with the proposed short-form merger in the event the court approves the proposed settlement.

## III.

Delaware courts have long favored the voluntary settlement of complex corporate litigation.[1] The job of the court in reviewing a proposed settlement is to ascertain that its terms are fair and reasonable.[2] Without deciding the merits of the case, the court must consider the na-

**1.** *Nottingham Partners v. Dana,* 564 A.2d 1089, 1102 (Del.1989); *Polk v. Good,* 507 A.2d 531, 535 (Del.1986); *Neponsit Inv. Co. v. Abramson,* 405 A.2d 97, 100 (Del.1979); *Rome v. Archer,* 197 A.2d 49, 53–54 (Del. 1964).

**2.** *Nottingham Partners,* 564 A.2d at 1102; *Polk,* 507 A.2d at 536.

ture of the claims asserted, the possible defenses and the factual circumstances, and then apply its own business judgment to determine whether the proposed settlement is fair. Of particular importance is the balance between the strength of the claims being compromised against the benefits secured for the class by the settlement.[3]

■ The court disagrees with Lowenschuss about the viability of the class claims attacking the 2002 tender offer.[4] Although the court twice refused to schedule expedited proceedings in connection with that offer, neither of those decisions reflected on the merits of the claims alleged by Blank on behalf of the class. As it happens, those claims appear to have at least arguable merit, certainly enough to support a decision to pay additional consideration to all class members in return for a settlement. In particular, there are reasonably litigable claims that the 2002 tender offer was inequitably coercive, when viewed through the prism of recent decisions of this court dealing with somewhat analogous situations.[5] Of course, it is a distinguishing feature of the 2002 tender offer that the company, instead of a majority stockholder, was the offeror. And, it may be significant that those defendants identified as the Management Shareholders are not alleged to have formulated a plan, at the time of the 2002 tender offer, to eliminate the non-tendering minority.

Nevertheless, there are still litigable issues about the director defendants' response to the suggestion that Westminster engage in a self-tender having the likelihood of resulting in either the delisting or deregistration of Westminster's common stock. Of course, not all stockholders tendered in response to the 2002 tender offer. Nevertheless, a significant number and percentage did, and their response is enough to suggest that the claim of inequitable coercion was potentially meritorious. For these reasons, the court rejects Lowenschuss's argument that nothing should be paid to those who tendered.

■ For the similar reasons, the court rejects Lowenschuss's contention that Blank, who did not tender, could not continue to represent the interests of those who did. This court will not allow a party to act as representative for those with whom he has a conflict of interest or is economically antagonistic.[6] But there is no evidence of such a conflict or antagonism here. All minority stockholders were similarly situated at the time the 2002 tender offer began. Blank was exposed to the same allegedly coercive conditions as all other stockholders. The fact that he brought suit instead of tendering in the face of those conditions does not make his interests adverse to those who tendered. Indeed, the best evidence of Blank's ability to represent those who tendered is seen in the fact that, after extensive discussions·

---

3. *See, Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279 (Del.1989).

4. Other than as discussed in this opinion, there is no dispute that this action is properly maintainable as a class action pursuant to Court of Chancery Rules 23(a), (b)(1) and (b)(2), and the court expressly so finds. *Prezant v. DeAngelis*, 636 A.2d 915, 925 (Del. 1994).

5. *In re Pure Resources S'holders Litig.*, 808 A.2d 421, 433–46 (Del.Ch.2002); *In re Aquila*

*Inc. S'holders Litig.*, 805 A.2d 184 (Del.Ch. 2002); *Next Level Communications, Inc. v. Motorola, Inc.*, 834 A.2d 828 (Del.Ch.2003); *In re Siliconix Inc. S'holders Litig.*, 2001 WL 716787 (Del.Ch. June 19, 2001).

6. *Youngman v. Tahmoush*, 457 A.2d 376, 380 (Del.Ch.1983); *see* Donald J. Wolfe, Jr. and Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 9–3[b](1)(iv) (2001 ed.).

and negotiations, he and his counsel negotiated a settlement that proposes to treat those who tendered in the same fashion as those who did not. Similarly, the fact that Blank agreed to sell his shares in a separate transaction from the proposed short-form merger does not make Blank an improper representative of those stockholders who did not tender. Blank's sale is subject to court approval and is on the same economic terms as will be paid to all other holders. In addition, because Blank's shares will be acquired outside the merger, he will suffer the detriment of not having appraisal rights available to him.

■ Insofar as the fairness of the $3 price is concerned, the court relies principally on the fact that Blank, who is the owner of nearly 350,000 shares and is represented by counsel, has determined that it is in his best interest to sell his shares at that price. From the record, it appears that Blank and his counsel reached this decision after they were given access to substantial confidential financial information relating to Westminster. Moreover, no member of the class, not even Lowenschuss, has articulated a reasoned objection to the fairness of that price. This is so notwithstanding the fact that the stockholders were furnished with the information required by Rule 13e–3 and Schedule 13E–3 under the Securities Exchange Act of 1934, in connection with the 2002 tender offer. Moreover, Westminster has continued to publish periodic financial reports since that time. For these reasons, the court is prepared to conclude that the settlement offers a fair and reasonable exchange for the claims of the class in the litigation.

In the end, Lowenschuss's objection is really to the fact that his shares will be eliminated in the short-form merger, not to the $3 per share price of that proposed merger. Evidently, he would be content to remain as a stockholder in Westminster even if its shares are delisted and deregistered. But this is hardly a valid objection to the settlement since Lowenschuss's preference in this regard is best seen as highly idiosyncratic. As a result of the 2002 tender offer and the contemplated purchase of Blank's shares, the Management Shareholders will have more than enough shares to accomplish a short-form merger. It would be highly unusual, if not unfair, to permit that to happen without obtaining a commitment from the Management Shareholders to treat the remaining shareholders equally. Moreover, they and Lowenschuss will have an appraisal remedy pursuant to Section 253(d) of the Delaware General Corporation Law.

■ Finally, the court must note its concern with one feature of the proposed settlement. In the Stipulation of Settlement, Westminster undertakes to file a Schedule 13E–3 with the Securities and Exchange Commission ("SEC") "within ten (10) business days following the entry of the Order of Final Judgment approving the Settlement" and to furnish copies thereof "to the holders of the Minority Shares." Westminster agrees to furnish copies of its proposed filing to Blank and his counsel at least three days before it is filed with the SEC and to incorporate therein "any reasonable proposals made by them." The Stipulation of Settlement then provides, as follows:

> Because the Merger is a part of this Settlement, any claim or objection relating to the Merger disclosures or the Schedule 13e–3 by any member of the Class must be made in writing to the Court no later than the expiration of any applicable appeal period for the Order of Final Judgment, or such claims shall be

released and waived.[7]

The court is concerned that this contemplated schedule does not provide Lowenschuss with an adequate opportunity to challenge the sufficiency of the disclosures made in connection with the Merger. Thus, the final order will provide that copies of the proposed filings be made available to Lowenschuss at the same time they are made available to the class representative and his counsel. This will allow Lowenschuss more than two weeks to review those disclosures and to raise any objection he may have to them. If colorable grounds are raised to challenge a material aspect of those disclosures, the court will take steps to address those issues in advance of the Order of Final Judgment becoming final and non-appealable.

### IV.

■ Turning to the petition for fees and expenses, the court concludes that the award should be limited to $100,000, in total. After reimbursement of expenses, this will allow a recovery of more than 17% of the benefit achieved in the litigation. That is a fair and adequate recovery for the plaintiff's counsel in this matter. In particular, the court is aware that the initial efforts to schedule a preliminary injunction did not meet with success for the reasons that are attributable to a lack of diligence. For that reason, the court concludes that it would not be appropriate to award the entire fee requested.

Nevertheless, the court rejects Lowenschuss's suggestion that "Blank should be responsible for his own fees and expenses." There is no question that plaintiff's counsels' efforts have produced a benefit for the class and, in the circumstances, it is fair and reasonable to allocate the fees and expenses reasonably incurred in ob-

taining that benefit, *pro rata*, among the members of the class.

### V.

For all of the foregoing reasons, the proposed settlement is approved and the Lowenschuss objection is overruled. The plaintiff's counsel should submit a form of order on notice.

---

**7.** Stipulation of Settlement, para. 4.